**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| **STEPHANIE MICHELLE NIXON, PH.D.**    * <br> 15313 Durant Street    * <br> Silver Spring, Maryland 20905    *   Civil No. <u>8:23-cv-3245</u> <br> (Montgomery County)    * <br>    * <br>          Plaintiff,    * <br>    *   **COMPLAINT AND DEMAND FOR** <br> **v.**    *   **JURY TRIAL** <br>    * <br> **THE LAUNDRESS, LLC**    * <br> 199 Prince Street    * <br> New York, New York, 10013    * <br>    * <br>          and    * <br>    * <br> **CONOPCO, INC. d/b/a UNILEVER HOME**    * <br> **& PERSONAL CARE USA**    * <br> 700 Sylvan Avenue    * <br> Englewood Cliffs, New Jersey 07632    * <br>    * <br>          Defendants.    * <br>    * | |

Plaintiff, **DR. STEPHANIE MICHELLE NIXON** ("Plaintiff"), by and through her attorneys, **JOHNSON BECKER, PLLC** and **JENNER LAW, P.C.**, hereby submits the following Complaint and Demand for Jury Trial against Defendants **THE LAUNDRESS, LLC** ("The Laundress") and **CONOPCO, INC. d/b/a UNILEVER HOME & PERSONAL CARE USA** ("Unilever") (collectively referred to as "Defendants"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

1

## NATURE OF THE CASE

1.      The Laundress was founded almost 20 years ago in New York, New York, and was purchased by Unilever in 2019.[1] Together, Defendants manufacture and sell cleaning products, including detergents, household cleaning solutions, and shampoos and hold themselves out "fabric care experts."[2]

2.      In 2020, Plaintiff, who was a member of the subscription service FabFitFun, received a bottle of The Laundress Signature Detergent (Lot No. F8509-0307) in her monthly subscription box.  She used the detergent primarily for handwashing delicate items, but did use the detergent in her washing machine once as well.

3.      In or around December 2020, following the use of The Laundress detergent, Plaintiff fell ill, developing a chronic cough that persisted for weeks.  Doctors diagnosed her with a bacterial infection and on or about December 30, 2020, Plaintiff tested positive for *pseudomonas aeruginosa*.[3]

4.      On or about December 1, 2022, nearly ***two years*** after Plaintiff fell ill, Defendants recalled[4] more than ***8 million*** The Laundress laundry and household cleaning products due to contamination with harmful bacteria, including, *inter alia*, *Klebsiella aerogenes*, *Burkholderia cepacia* complex,

---

[1] *See* https://www.thelaundress.com/pages/product-safety (last accessed July 11, 2023).
[2] *Id*.
[3] *Pseudomonas aeruginosa* is a type of gram-negative bacteria that commonly exists in water, plants, and soil, or in moist or wet areas like bathtubs, hot tubs, and sinks.  Exposure to *Pseudomonas aeruginosa* can lead to a variety of infections, including, *inter alia*, blood infections, lung infections, skin infections, urinary tract infections, ear infections, eye infections, and GI tract infections.  *Pseudomonas aeruginosa* has the potential to lead to sepsis and organ failure, and over time has evolved to develop antibiotic resistance.
https://www.merckmanuals.com/home/infections/bacterial-infections-gram-negative-bacteria/pseudomonas-infections (last accessed November 13, 2023).
[4]     *See*     https://www.cpsc.gov/Recalls/2023/The-Laundress-Recalls-Laundry-Detergent-and-Household-Cleaning-Products-Due-to-Risk-of-Exposure-to-Bacteria (last accessed November 13, 2023).  A copy of the Safety Recall Report is attached hereto as Exhibit A.

and *Pseudomonas*. According to the recall, "[p]eople with weakened immune systems, external medical devices, and underlying lung conditions who are exposed to the bacteria face a risk of serious infection that may require medical treatment."[5]

5. Defendants manufactured, marketed and sold these detergents with harmful bacteria that made it inherently dangerous to consumers, including the Plaintiff in this case.

6. Defendants knew or should have known of this contamination, but nevertheless put profit ahead of safety by continuing to sell their detergents to consumers, failing to warn said consumers of the serious risks posed by said contamination and failing to timely recall the dangerous detergents despite the risk of significant and serious injuries to Plaintiff and consumers like her.

7. As a direct and proximate result of Defendants' collective conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## THE PARTIES

8. Plaintiff, Dr. Stephanie Michelle Nixon, is a resident and citizen of the City of Silver Spring, Montgomery County, Maryland. Plaintiff is, therefore, a citizen of the State of Maryland for purposes of diversity jurisdiction as prescribed by 28 U.S.C. § 1332.

9. Defendant The Laundress, LLC, is a Delaware limited liability company with its principal place of business located at 199 Prince Street, New York, New York, 10013.

10. Defendant Conopco, Inc. d/b/a Unilever Home & Personal Care USA is a New York corporation with its principal place of business located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Conopco is an affiliate of the Unilever Group and, upon information and belief, Conopco manufactures, markets, designs, promotes, and/or distributes The Laundress Products in

---

[5] *Id*.

3

New York and throughout the United States. Conopco and Unilever acquired The Laundress in or about 2019.

11. . Defendants manufacture and sell cleaning products, including detergents, household cleaning solutions, and shampoos and hold themselves out "fabric care experts."[6]

12. Defendants manufacture, market, advertise, and distribute their cleaning products in this District and throughout the United States.

13. Plaintiff is informed, believes, and alleges that all acts and omissions of each Defendant or Defendants alleged herein were undertaken by each of the Defendants and/or their agents, servants, employees and/or owners while acting in the course and scope of their respective agencies, services, employments and/or ownerships.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident and citizen of this District, and all or a substantial part of the events or omissions giving rise to this claim occurred in this District.

16. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of Maryland and intentionally availed themselves of the markets within Maryland through the promotion, sale, marketing, and distribution of their products.

---

[6] *See* https://www.thelaundress.com/pages/product-safety (last accessed July 11, 2023).

**FACTUAL BACKGROUND**

17.  The Laundress was founded almost 20 years ago by former fashion industry professionals and college classmates, Lindsey Boyd and Gwen Whiting.[7] Within four years, the brand, which promised its products were "a way to turn an everyday chore into a luxurious experience," was turning a profit.[8] Profits continued to skyrocket, and in 2019 Unilever bought the Laundress for a reported $100 million.[9]

18.  Defendants marketed their detergents as an "effective, environmentally friendly way to clean and care" for clothes[10] and represented to consumers that "every product [was] nontoxic and 100% biodegradable."[11]

19.  Defendants even went so far as to claim that their products could help consumers "rid [themselves] of household toxins,"[12] and marketed and sold their products as "Clean Detox Kits" that would help consumers clean and care for their "home, [their] wardrobe, and the environment with ease."[13]

---

[7] *See* https://www.thecut.com/article/the-laundress-detergent-recall-bacteria.html (last accessed November 21, 2023).
[8] *Id.*
[9] *Id.*
[10] https://www.youtube.com/watch?v=BxrcsKHo444 (video with a runtime of 1:18) at 0:15-0:22 (last accessed November 21, 2023).
[11] *Id*. at 0:51-0:55.
[12] https://www.instagram.com/p/Bvu0fUOlO2b/?utm_source=ig_embed&ig_rid=53927021-9a93-4b3a-8f8d-4fd613f91802 (last accessed November 21, 2023).
[13] *Id.*



See https://www.instagram.com/p/Bvu0fUOlO2b/?utm_source=ig_embed&ig_rid=53927021-9a93-4b3a-8f8d-4fd613f91802 (last accessed November 21, 2023).

20.   Defendants expressly represented to consumers that their detergents were plant-based, petroleum free, low-preservative, safe, eco-friendly, and toxin free.[14] and marketed their products as "designer product[s] that [were] better for you, your children, the environment, and your other designer products."[15]

21.   However, despite their claims that The Laundress products are "ecofriendly" and "toxin free," Defendants formulated, designed, manufactured, licensed, marketed, supplied, and sold detergents contaminated with dangerous and potentially deadly bacteria.

22.   In 2020, Plaintiff, who was a member of the subscription service FabFitFun, received a bottle of The Laundress Signature Detergent (Lot No. F8509-0307) in her monthly subscription

---

[14] See Petrarca, Emilia, "Dirty Soap," The Cut, https://www.thecut.com/article/the-laundress-detergent-recall-bacteria.html (last accessed November 21, 2023).
[15] Id.

box. She used the detergent primarily for handwashing delicate items, but did use the detergent in her washing machine once as well.

23.     In or around December 2020, following the use of The Laundress detergent, Plaintiff fell ill, developing a chronic cough, shortness of breath, chest tightness, and fatigue. Doctors diagnosed her with a bacterial infection and on or about December 30, 2020, Plaintiff tested positive for *pseudomonas aeruginosa*.

24.     As a result of the *pseudomonas aeruginosa* respiratory infection, Plaintiff developed a chronic and debilitating cough which persisted for at least several months, with lingering symptoms persisting years later.

25.     Plaintiff's symptoms made it impossible to perform her job as a speech pathologist due to voice loss, shortness of breath, and fatigue.

26.     Further, as of April 2021, four months after Plaintiff's symptoms began, Plaintiff still had not been able to consume a full meal due to coughing fits.

27.     The severity of Plaintiff's symptoms, combined with the unknown origins of the *pseudomonas aeruginosa* infection, raised concerns with Plaintiff's doctors that she may have a serious, undiagnosed condition such as cystic fibrosis. Plaintiff underwent a battery of tests while doctors attempted to determine the source of her health concerns.

28.     Today, nearly **three years** after Plaintiff was first diagnosed with *pseudomonas aeruginosa*, Plaintiff continues to experience coughing, fatigue, and extreme dry mouth. Plaintiff additionally experiences sciatic nerve pain, back pain, and incontinence related to her frequent, long-term coughing.

29. On or about December 1, 2022, nearly **two years** after Plaintiff fell ill, Defendants recalled[16] more than **8 million** The Laundress laundry and household cleaning products due to contamination with harmful bacteria, including, *inter alia*, *Klebsiella aerogenes*, *Burkholderia cepacia* complex, and *Pseudomonas*. According to the recall, "[p]eople with weakened immune systems, external medical devices, and underlying lung conditions who are exposed to the bacteria face a risk of serious infection that may require medical treatment."[17]

30. Defendants manufactured, marketed and sold these detergents with harmful bacteria including, *inter alia*, *Klebsiella aerogenes*, *Burkholderia cepacia* complex, and *Pseudomonas* that made them inherently dangerous to consumers, including the Plaintiff in this case.

31. Plaintiff used her Laundress detergent for the intended purpose of washing her clothes, and did so in a manner that was reasonable and foreseeable by Defendants.

32. However, the aforementioned detergents contained harmful bacteria, including, *inter alia*, *Klebsiella aerogenes*, *Burkholderia cepacia* complex, and *Pseudomonas*, placing the Plaintiff, her family, and similar consumers in danger of exposure.

33. Defendants' detergents possess contamination that makes them unreasonably dangerous for their intended use by consumers because of the risk of exposure to harmful bacteria such as *Klebsiella aerogenes*, *Burkholderia cepacia* complex, and *Pseudomonas*.

34. As a direct and proximate result of Defendants' intentional concealment of such contamination, their failure to warn consumers of such contamination and their failure to timely remove a product with such contamination from the stream of commerce, Plaintiff used an unreasonably dangerous detergent, which resulted in significant and painful bodily injuries.

---

[16] *See* https://www.cpsc.gov/Recalls/2023/The-Laundress-Recalls-Laundry-Detergent-and-Household-Cleaning-Products-Due-to-Risk-of-Exposure-to-Bacteria (last accessed November 13, 2023).  A copy of the Safety Recall Report is attached hereto as Exhibit A.
[17] *Id*.

35. Consequently, Plaintiff seeks damages resulting from the use of Defendants' detergents as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, wage loss and other damages.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **STRICT LIABILITY**

36. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

37. Defendants manufacture and sell cleaning products, including detergents, household cleaning solutions, and shampoos including, *inter alia*, the detergent at issue in this case.

38. At the time of Plaintiff's injuries, the detergents were contaminated and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

39. The detergents were in the same or substantially similar condition as when they left the possession of the Defendants.

40. Plaintiff and her family did not misuse or materially alter the detergents.

41. The detergents did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

42. Further, a reasonable person would conclude that the possibility and risk of serious harm outweigh the burden or cost of making the detergents safe. Specifically:

   a. The detergents designed, manufactured, licensed, sold, and supplied by the Defendants were contaminated and placed into the stream of commerce in an unreasonably dangerous condition for consumers;

   b. The seriousness of the potential infections and injuries resulting from the product drastically outweigh any benefit that could be derived from its normal, intended use;

    c. Defendant failed to properly market, design, license, manufacture, distribute, supply, and sell the detergents, despite having extensive knowledge that the aforementioned bacterial exposures could and did occur;

    d. Defendant failed to warn and place adequate warnings and instructions on the detergents;

    e. Defendant failed to adequately test the detergents; and

    f. Defendant failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

43. The defective and unreasonably dangerous condition of the product was a direct and proximate cause of the Plaintiff's injuries and damages, as described with particularity, above.

## COUNT II
## NEGLIGENCE

44. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

45. Defendants manufacture and sell cleaning products, including detergents, household cleaning solutions, and shampoos including, *inter alia*, the detergent at issue in this case.

46. Defendants had a duty of reasonable care to design, warn, manufacture, market, and sell uncontaminated detergents that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

47. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of their detergents in that Defendant knew or should have known that said detergents created a high risk of unreasonable harm to the Plaintiff and consumers alike.

48. Specifically, Defendants were negligent and otherwise failed to exercise reasonable care in one or more of the following ways:

      a. Failing to implement appropriate processes, procedures, and systems throughout the manufacture of their detergents;

      b. Failing to provide adequate warnings about the risk that the subject detergents could be contaminated and lead to infections;

      c. Failing to ensure that consumers, including Plaintiff, received adequate warnings about the risk that the subject detergents were contaminated;

      b. Placing an unsafe product into the stream of commerce;

      c. Failing to timely recall the subject detergents; and

      d. Were otherwise careless or negligent.

45. Despite the fact that Defendants knew or should have known of these contamination issues, Defendants continued to sell, distribute, and market their detergents to the general public.

49. Defendants' collective actions and omissions were a direct and proximate cause of the Plaintiff's injuries and damages, as described with particularity, above.

## COUNT III
## BREACH OF EXPRESS WARRANTY

46. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

47. Defendants expressly warranted that their The Laundress products were an "effective, environmentally friendly way to clean and care" for clothes[18] and that "every product [was] nontoxic and 100% biodegradable."[19]

---

[18] *See* https://www.youtube.com/watch?v=BxrcsKHo444 (video with a runtime of 1:18) at 0:15-0:22 (last accessed November 21, 2023).
[19] *Id*. at 0:51-0:55.

11

48.     Defendants even warranted that their products could help consumers "rid [themselves] of household toxins,"[20] and marketed and sold their products as "Clean Detox Kits" that would help consumers clean and care for their "home, [their] wardrobe, and the environment with ease."[21]

49.      Defendants expressly warranted to consumers that their detergents were plant-based, petroleum free, low-preservative, safe, eco-friendly, and toxin free.[22] and marketed their products as "designer product[s] that [were] better for you, your children, the environment, and your other designer products."[23]  They claim that their products and their brand is better than other leading detergents, not just because they are better for consumers' clothing, but because they are "better for [consumers]" and "better for the environment."[24]

50.     Members of the consuming public, including consumers such as the Plaintiff were the intended third-party beneficiaries of the warranty.

51.     Defendants' detergents and cleaning supplies do not conform to these express representations due to the unreasonable risks of contamination and bodily injury associated with their use.

52.     Despite Defendants' warranties that their products are safe, nontoxic, clean, and eco-friendly, consumers cannot safely use the detergents without risking exposure to dangerous contaminants.

---

[20] *See* https://www.instagram.com/p/Bvu0fUOlO2b/?utm_source=ig_embed&ig_rid=53927021-9a93-4b3a-8f8d-4fd613f91802 (last accessed November 21, 2023).
[21] *Id*.
[22] *See* https://www.thecut.com/article/the-laundress-detergent-recall-bacteria.html (last accessed November 21, 2023).
[23] *Id*.
[24] *See* https://people.com/home/the-laundress-lindsey-boyd-gwen-whiting/ (last accessed November 21, 2023).

53. The Plaintiff in this case received and used Defendants' detergent with the reasonable expectation that it was properly formulated and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cleaning and laundering clothes.

54. Defendants' breach of their express warranties was a direct and proximate cause of Plaintiff's injuries and damages, as described with particularity, above.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

55. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

56. Defendants manufactured, supplied, and sold their cleaning products and detergents with an implied warranty that they were fit for the particular purpose of cleaning and doing laundry.

57. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

58. Defendants' detergents were not fit for the particular purpose of cleaning and doing laundry, due to the unreasonable risks of contamination and bodily injury associated with their use.

59. The Plaintiff in this case reasonably relied on Defendants' representations that its detergents were a safe and effective means of washing her clothes.

60. Defendants' breach of the implied warranty of fitness for a particular purpose was a direct and proximate cause of Plaintiff's injuries and damages, as described with particularity, above.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

61. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

62. At the time Defendants marketed, licensed, distributed and sold their detergents to the Plaintiff in this case, Defendants warranted that their detergents were merchantable and fit for the ordinary purposes for which they were intended.

63. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

64. Defendants' detergents were not merchantable and fit for their ordinary purpose, because they had the propensity to be contaminated and lead to the serious personal injuries as described herein in this Complaint.

65. Plaintiff used her detergent with the reasonable expectation that it was properly designed and manufactured, free from contamination or defects of any kind, and that it was safe for its intended, foreseeable use of washing clothes.

66. Defendants' breach of implied warranty of merchantability was a direct and proximate cause of Plaintiff's injury and damages, as described with particularity, above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, to which she is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

 a. judgment for Plaintiff and against Defendants;

 b. damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendants' detergent;

 c. pre and post judgment interest at the lawful rate; and,

 d. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

Respectfully submitted,

**JENNER LAW, P.C.**

Date: November 29, 2023

*/s/ Robert K. Jenner*
Robert K. Jenner (Bar No. 04615)
Kathleen R. Kerner (Bar No. 18955)
3600 Clipper Mill Road, Suite 240
Baltimore, MD 21211
410-413-2155 / 410-982-0122 (fax)
rjenner@jennerlawfirm.com
kkerner@jennerlawfirm.com

*In association with:*

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.
*Pro Hac Vice to be filed*
Anna Rick, Esq.
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 /612-436-1801 (fax)
akress@johnsonbecker.com
arick@johnsonbecker.com

*Attorneys for Plaintiff*